1

2

3

4

5

6

7

8

9

10

11

12

United States District Court
Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ISAIAH SCOTT,

          Plaintiff,

     v.

CINTAS CORPORATION,

          Defendant.

Case No. 3:23-cv-05764-JSC

**ORDER RE: DEFENDANT'S MOTION TO DISMISS**

Re: Dkt. No. 35

Isaiah Scott, a former Management Trainee at Cintas Corporation ("Cintas"), alleges

Cintas violated the Fair Labor Standards Act ("FLSA") as well as several California Labor Code

provisions. (Dkt. No. 34.)[1] The Court previously granted Defendant's motion to dismiss the

Second Amended Complaint with leave to amend. Now pending before the Court is Cintas's

motion to dismiss the Third Amended Complaint under Federal Rules of Civil Procedure 12(b)(6).

Having carefully considered the briefing, the Court concludes oral argument is not required, *see*

N.D. Cal. Civ. L.R. 7-1(b), and DENIES Cintas's motion to dismiss as to all claims except for

Scott's claim under California's Unfair Competition Law. Scott has plausibly pled violations of

the FLSA and California Labor Code. However, Scott fails to plead an inadequate remedy at law,

so the Court dismisses his Unfair Competition Law claim without prejudice.

**COMPLAINT ALLEGATIONS**

Scott "was employed by Defendants as a [Management Trainee] from approximately

October 2020 until approximately January 2022 in Hayward, California and Pittsburg, California."

(Dkt. No. 34 ¶ 6.) "Defendants' Management Trainee program is an extensive, structured training

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

program designed for college graduates to prepare them for an eventual management role in the

company, including a series of rotations in various departments as well as classroom seminars."

(*Id.* ¶ 41.)  As a Management Trainee, Plaintiff "spent the vast majority of [his] workdays

completing training tasks and assignments in an effort to eventually be able to perform sales and

management job functions following graduation from the [Management Trainee] program."  (*Id.* ¶

42.)  "Defendants assigned all the work that Plaintiff . . . performed, or Defendants were aware of

all the work performed by Plaintiff."  (*Id.* ¶¶ 31, 48.)

"During his employment as a [Management Trainee], Plaintiff regularly worked nine to ten

hours, or more, per day, and 45 to 55 hours, or more, per week."  (*Id.* ¶ 9.)  "For example, during

the week of December 7, 2020, Plaintiff worked approximately 55 hours, if not more."  (*Id.* ¶ 10.)

However, "Plaintiff was classified as an overtime-exempt employee," so "Defendant never paid

Plaintiff any overtime wages despite the fact that he regularly worked overtime throughout his

employment" with Defendant.  (*Id.* ¶¶ 8, 13.)  Instead, Plaintiff "was paid an annual salary of

approximately $65,000.00" and received "the same amount each pay period . . . regardless of the

number of overtime hours Plaintiff worked during that pay period."  (*Id.* ¶ 8.)

Plaintiff also "regularly did not receive meal or rest periods."  (*Id.* ¶ 14.)  "Specifically, . . .

on December 7, 2020, Plaintiff did not receive an uninterrupted meal period of at least 30 minutes

in which Plaintiff was completely relieved of duty."  (*Id.* ¶ 15.)  Similarly, "on December 7, 2020,

Plaintiff did not receive at least two uninterrupted break periods of at least ten minutes in which

Plaintiff was completely relieved of duty."  (*Id.* ¶ 16.)  Indeed, "Defendants failed to schedule

meal and rest periods for Plaintiff" and "[i]nstead . . . staffed their locations in such a way that—in

order for the locations to effectively operate—Plaintiff . . . would have to cover for the hourly-paid

employees who were actually scheduled to receive meal and rest periods during those hourly-paid

employees' scheduled meal and rest periods."  (*Id.* ¶ 56.)

Plaintiff brings seven causes of action: (1) Unpaid Overtime Wages in violation of the

FLSA, 29 U.S.C. §§ 201 *et seq.*; (2) Unpaid Overtime Wages in violation of California Labor

Code §§ 510, 558, and 1194, and California Code of Regulations tit. 8 § 11040; (3) Failure to

Provide Meal Breaks in violation of California Labor Code §§ 226.7, 512, and 1194, and

United States District Court
Northern District of California

1    California Code of Regulations tit. 8 § 11040; (4) Failure to Provide Rest Breaks in violation of

2    California Labor Code §§ 226.7 and 1194, and California Code of Regulations tit. 8 § 11040; (5)

3    Failure to Furnish Accurate Itemized Wage Statements in violation of California Labor Code §§

4    226, 226.3, 1174, and California Code of Regulations tit. 8 § 11040; (6) Failure to Pay All Wages

5    Upon Termination in violation of California Labor Code §§ 202, 203, and 256; and (7) Unfair

6    Competition Law Violation under California Business & Professions Code §§ 17200 *et seq.*.

7    **DISCUSSION**

8    **I.    OVERTIME CLAIMS**

9    Plaintiff's first two causes of action allege the failure to pay overtime wages.  Cintas again

10   moves to dismiss both overtime claims because (1) Plaintiff's "conclusory allegations . . . fall

11   short of the necessary pleading standards" (Dkt. No. 39 at 3); and (2) the complaint "lacks facts

12   demonstrating that anyone at Cintas purportedly required Plaintiff to work daily or weekly

13   overtime, or that Plaintiff notified anyone that he was purportedly working overtime hours."  (Dkt.

14   No. 35-1 at 8.)

15   Plaintiff has met the pleading requirements of Rule 8 for both his overtime claims.  Federal

16   Rules of Civil Procedure 8 requires "a short and plain statement of the claim showing that the

17   pleader is entitled to relief."  Fed. R. Civ. Proc. R. 8.  In *Landers*, the Ninth Circuit applied Rule 8

18   to overtime claims, explaining "in order to survive a motion to dismiss, a plaintiff asserting a

19   claim to overtime payments must allege that she worked more than forty hours in a given

20   workweek without being compensated for the overtime hours worked during that workweek."

21   *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644–45 (9th Cir. 2014), *as amended* (Jan. 26,

22   2015).  Scott has done just that: he alleges he worked more than 40 hours in at least one specific

23   week (Dkt. No. 34 ¶ 10 ("[D]uring the week of December 7, 2020, Plaintiff worked approximately

24   55 hours, if not more")), but that he never received any payment for overtime hours worked

25   because he was classified as an exempt employee.  (*Id.* ¶ 13.)  So, Plaintiff has plausibly pled a

26   claim under both the FLSA and California Labor Code.

27   Defendant's second argument—the complaint must be dismissed because Plaintiff fails to

28   allege Cintas required Plaintiff to work overtime or that he notified anyone he was working

United States District Court
Northern District of California

1    overtime—also fails.  Under the FLSA and under California law, courts apply the "suffer or

2    permit to work" test when determining whether time is compensable.  *See Lindow v. United*

3    *States*, 738 F.2d 1057, 1060 (9th Cir. 1984) (Under the FLSA, "[a]n employer must pay overtime

4    when he 'suffers' or 'permits' an employee to work in excess of 40 hours."); 29 C.F.R. § 785.11

5    ("Work not requested but suffered or permitted is work time.  For example, an employee may

6    voluntarily continue to work at the end of the shift.  He may be a pieceworker, he may desire to

7    finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or

8    other records.  The reason is immaterial. The employer knows or has reason to believe that he is

9    continuing to work and the time is working time."); *Huerta v. CSI Elec. Contractors*, 15 Cal. 5th

10   908, 918 (2024) ("[A]n employee who is suffered or permitted to work does not have to be under

11   the employer's control to be compensated, provided the employer has or should have knowledge

12   of the employee's work."); *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 938 (N.D.

13   Cal. 2016) (describing the California standard and the FLSA standard for determining when work

14   by an employee is compensable as "equivalent").  This test focuses on the employer's actual or

15   constructive knowledge: "an employer who knows or should have known that an employee is or

16   was working overtime must" pay overtime wages.  *Forrester v. Roth's I. G. A. Foodliner, Inc.*,

17   646 F.2d 413, 414 (9th Cir. 1981); *see also Huerta*, 15 Cal. 5th at 918 ("[A]n employee who is

18   suffered or permitted to work does not have to be under the employer's control to be compensated,

19   provided the employer has or should have knowledge of the employee's work." (cleaned up)).  But

20   "where an employer has no knowledge that an employee is engaging in overtime work and that

21   employee fails to notify the employer or deliberately prevents the employer from acquiring

22   knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a

23   violation of . . . overtime wage requirements."  *Forrester*, 646 F.2d at 414.

24          Plaintiff has sufficiently pled Defendant had knowledge, or constructive knowledge, he

25   was working overtime.  "Malice, intent, knowledge, and other conditions of a person's mind may

26   be alleged generally."  Fed. R. Civ. P. 9.  Plaintiff's factual allegations establish Defendant knew,

27   or should have known, he worked more than 40 hours a week.  He alleges the "Management

28   Trainee program is an extensive, structured training program."  (Dkt. No. 34 ¶ 40.)  He was

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "closely supervised by" his "managers and corporate-level employees, and Defendants' policies

2    and procedures defined and circumscribed their work." (*Id.* ¶ 47.)   "Defendants assigned all the

3    work that Plaintiff . . . performed, or Defendants were aware of all the work performed by

4    Plaintiff." (*Id.* ¶ 48.)  Construing all factual allegations in Plaintiff's favor and assuming the truth

5    of such allegations, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion*

6    *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001), Plaintiff alleges his supervisors

7    assigned his work and closely supervised that work.  Accordingly, Plaintiff alleges Cintas was

8    aware, or should have been aware, Plaintiff was working overtime hours.

9        Defendant's citation to *Forrester* is unpersuasive.  646 F.2d 413.  In *Forrester*, the plaintiff

10   "deliberately omitted the inclusion of [overtime] hours from his time sheet even though he

11   admittedly knew that he would have been paid for those hours." *Id.* at 414.  The Ninth Circuit

12   upheld the district court's granting of summary judgment to the defendant because "no genuine

13   issue of material fact had been raised as to whether any official of [the defendant] knew or should

14   have known that Forrester had been uncompensated for overtime work he performed." *Id.*  The

15   Ninth Circuit "did not conclude that an employer's actual knowledge of the overtime was a per se

16   element of the claim that needed to be pled to survive a motion to dismiss," *Washington v. Crab*

17   *Addison, Inc.*, No. C 08-5551 PJH, 2010 WL 2528963, at *3 (N.D. Cal. June 18, 2010), but

18   instead held an employer would not be liable for overtime wage violations if the employee

19   deliberately hid that he was working overtime hours and the employee failed to prove the

20   employer knew or should have known the employee was working overtime.

21       Accordingly, Defendant's motion to dismiss Plaintiff's overtime claims is DENIED.

22   **II.    UNPAID MEAL BREAK CLAIMS**

23       Plaintiff's third cause of action alleges Cintas failed to provide meal breaks for California

24   workers in violation of California Labor Code §§ 226.7, 512, and 1194, and California Code of

25   Regulations tit. 8 § 11040.

26       California Labor Code § 512(a) states "[a]n employer shall not employ an employee for a

27   work period of more than five hours per day without providing the employee with a meal period of

28   not less than 30 minutes."  Moreover, under California law "[a]n employer shall not require an

United States District Court
Northern District of California

1   employee to work during a meal . . . period mandated pursuant to an applicable . . . order of the

2   Industrial Welfare Commission." Cal. Lab. Code § 226.7(a). The Industrial Welfare Commission

3   Wage Order 4-2001, which applies to "all persons employed in professional, technical, clerical,

4   mechanical, and similar occupations," mandates a "meal period of not less than 30 minutes" when

5   employees work more than five hours. Cal. Code Regs. tit. 8, § 11040(1); (11)(A). During the

6   meal break, the employer must "relieve[] its employees of all duty, relinquish[] control over their

7   activities and permit[] them a reasonable opportunity to take an uninterrupted 30-minute break,"

8   without "imped[ing] or discourage[ing] them from doing so." *Brinker Rest. Corp. v. Superior Ct.*,

9   53 Cal. 4th 1004, 1018 (2012). "Unless the employee is relieved of all duty during a 30 minute

10  meal period, the meal period shall be considered an 'on duty' meal period and counted as time

11  worked." Cal. Code Regs. tit. 8, § 11040(11)(A). Such "on duty" meal periods are "permitted

12  only . . . by written agreement between the parties." *Id.* Finally, the applicable wage order

13  requires "[e]very employer" to "keep accurate information" including "[t]ime records showing

14  when the employee begins and ends each work period," "[m]eal periods" and "total daily hours

15  worked," though "[m]eal periods during which operations cease and authorized rest periods need

16  not be recorded." Cal. Code Regs. tit. 8, § 11040(7)(A)(3).

17          Scott has sufficiently pled a violation of California's meal period requirements. Scott

18  alleges "Defendants do not have a policy or practice of providing meals" to Management Trainees.

19  (Dkt. No. 34 ¶ 113.) He pleads "Defendants failed to schedule meal" periods for Management

20  Trainees, and "[i]nstead, Defendants staffed their locations in such a way that—in order for the

21  locations to effectively operate," Management Trainees had to "cover for the hourly-paid

22  employees who were actually scheduled to receive meal . . . periods." (*Id.* ¶ 56.) In particular,

23  Scott alleges "on December 7, 2020" he "did not receive an uninterrupted meal period of at least

24  30 minutes in which Plaintiff was completely relieved of duty." (*Id.* ¶ 15.) These factual

25  allegations demonstrate Plaintiff, as a Management Trainee, was not provided with at least a 30-

26  minute period during which he was completely relieved of duty. Therefore Plaintiff pleads a

27  prima facie case of a meal break violation.

28          Cintas, citing *Brinker*, argues "[t]here are no facts alleged in the [amended complaint]

1   suggesting that Cintas failed to provide breaks or engaged in any conduct to prevent or discourage

2   Plaintiff from taking his breaks." (Dkt. No. 35-1 at 9.)  In *Brinker*, the California Supreme Court

3   California held while "an employer may not undermine a formal policy of providing meal breaks

4   by pressuring employees to perform their duties in ways that omit breaks," if the employee

5   voluntarily waives their meal breaks, the employer may avoid liability.  *Brinker*, 53 Cal. 4th at

6   1004.  Therefore, "[p]roof an employer had knowledge of employees working through meal

7   periods will not alone subject the employer to liability for premium pay; employees cannot

8   manipulate the flexibility granted them by employers to use their breaks as they see fit to generate

9   such liability."  *Id.*

10          However, "an employer's assertion that an employee waived a meal period 'is not an

11   element that a plaintiff must disprove as part of the plaintiff's case-in-chief.'"  *Donohue v. AMN*

12   *Servs., LLC*, 11 Cal. 5th 58, 75 (2021) (quoting *Brinker*, 53 Cal. 4th at 1053 (Werdegar, J.,

13   concurring)).  Rather, "the assertion is 'an affirmative defense,' and 'the burden is on the

14   employer, as the party asserting waiver, to plead and prove it.'"  *Id.* (quoting *Brinker*, 53 Cal. 4th

15   at 1053 (Werdegar, J., concurring)).  At this stage of the case, the Defendant has not provided

16   admissible evidence demonstrating, as a matter of law, Scott waived his meal periods.

17          Defendant also asserts Plaintiff's complaint is "missing the specific underlying policy or

18   practice that prohibited Plaintiff from taking an off-duty break," citing *Ramirez v. HV Glob.*

19   *Mgmt. Corp.*, No. 21-CV-09955, 2023 WL 322888, at \*5 (N.D. Cal. Jan. 19, 2023).   (Dkt. No. 39

20   at 4.)  But Plaintiff pleads the *absence* of an underlying policy: Cintas did "not have a policy or

21   practice of providing meal periods to" Management Trainees, like Scott.  (Dkt. No. 34 ¶ 113.)

22   Moreover, *Ramirez* did not hold pleading such a policy was necessary.  Instead, *Ramirez* held

23   "[t]o state a claim for failure to provide required rest or meal periods, Ramirez must at least allege

24   either a specific corporate policy prohibiting those breaks *or a specific instance or instances in*

25   *which he was denied a required break*."  2023 WL 322888 at \*5 (emphasis added).  Here, Scott

26   pleads such a specific instance: "on December 7, 2020" he "did not receive an uninterrupted meal

27   period of at least 30 minutes in which Plaintiff was completely relieved of duty."  (Dkt. No. 34 ¶

28   15.)

United States District Court
Northern District of California

7

1    Accordingly, Scott stated a claim for meal period violations under California law, and

2  Defendant's motion to dismiss is DENIED.

3  **III.    UNPAID REST BREAK CLAIMS**

4    Plaintiff's fourth cause of action alleges Cintas failed to provide rest breaks for California

5  employees in violation of California Labor Code §§ 226.7 and 1194, and California Code of

6  Regulations tit. 8 § 11040.

7    The Industrial Welfare Commission Wage Order 4-2001 has a "Rest Periods" provision,

8  which indicates:

9    (A) Every employer shall authorize and permit all employees to take
10   rest periods, which insofar as practicable shall be in the middle of
     each work period. The authorized rest period time shall be based on
     the total hours worked daily at the rate of ten (10) minutes net rest
11   time per four (4) hours or major fraction thereof. . . . Authorized rest
     period time shall be counted as hours worked for which there shall be
12   no deduction from wages.

13   (B) If an employer fails to provide an employee a rest period in
     accordance with the applicable provisions of this order, the employer
14   shall pay the employee one (1) hour of pay at the employee's regular
     rate of compensation for each workday that the rest period is not
15   provided.

16 Cal. Code Regs. tit. 8, § 11040 (12).  Moreover, "[d]uring required rest periods, employers must

17 relieve their employees of all duties and relinquish any control over how employees spend their

18 break time." *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257, 260 (2016), *as modified on denial*

19 *of reh'g* (Mar. 15, 2017).   While "an employer is required to make uninterrupted . . . rest breaks

20 available to its employees," the employer "is not obligated to ensure that they are taken." *Koval v.*

21 *Pac. Bell Tel. Co.*, 232 Cal. App. 4th 1050, 1058 (2014); *see also Cleveland v. Groceryworks.com,*

22 *LLC*, 200 F. Supp. 3d 924, 953 (N.D. Cal. 2016) ("[A]n employer is not liable for failure to

23 provide rest breaks if it authorizes and permits an employee to take his or her rest break and the

24 employee—absent coercion or encouragement on the part of the employer—foregoes his or her

25 rest period.").

26    Scott pleads sufficient allegations to state a claim for a rest break violation.  Scott alleges

27 Cintas did "not have a policy or practice or providing rest periods" to Scott, or other management

28 trainees.  (Dkt. No. 34 ¶ 121.)  Further, he specifies "on December 7, 2020, Plaintiff did not

United States District Court
Northern District of California

1   receive at least two uninterrupted break periods of at least ten minutes in which Plaintiff was

2   completely relieved of duty." (*Id.* ¶ 16.)  Accordingly, Scott pleads facts indicating his employer

3   did not authorize rest periods and he did not take the rest periods he alleges are required.

4      Cintas moves to dismiss Plaintiff's rest break claim because "only Plaintiff, not Cintas,

5   was responsible for ensuring he took breaks." (Dkt. No. 35-1 at 9-10.)  But, under the Wage

6   Order, "[a]n employer has a duty to authorize and permit rest breaks." *Faulkinbury v. Boyd &*

7   *Assocs., Inc.*, 216 Cal. App. 4th 220, 236 (2013), *disapproved of on other grounds by Noel v.*

8   *Thrifty Payless, Inc.*, 7 Cal. 5th 955 (2019).  So, an employer's liability will "arise upon a finding

9   that its uniform rest break policy, or lack of policy, was unlawful." *Id.*  In analyzing identical

10  language under Wage Order No. 5, the Supreme Court of California held:

11  
12  
> An employer is required to authorize and permit the amount of rest break time called for under the wage order for its industry. If it does not—if, for example, it adopts a uniform policy authorizing and permitting only one rest break for employees working a seven-hour shift when two are required—it has violated the wage order and is liable. No issue of waiver ever arises for a rest break that was required by law but never authorized; if a break is not authorized, an employee has no opportunity to decline to take it.

13  
14  
15  

16  *Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1033 (2012).  Here, drawing all inferences

17  in Scott's favor, Scott alleges no breaks were authorized for management trainees because Cintas

18  had no policy providing such trainees to take rest breaks.  Accordingly, Scott alleges Cintas

19  violated its duty under the California Labor Code, and any allegations Scott waived his rest breaks

20  are irrelevant since such breaks were "never authorized."  So, Defendant's motion to dismiss this

21  claim is DENIED.

22  **IV. INACCURATE WAGE STATEMENTS**

23     Plaintiff's fifth cause of action alleges Cintas failed to furnish accurate wage statements in

24  violation of California Labor Code §§ 226, 226.3, 1174, and Cal. Code Regs. Tit. 8 § 11040.

25     California Labor Code § 226(a) provides "[a]n employer . . .  at the time of each payment

26  of wages, shall furnish to their employee . . . an accurate itemized statement in writing showing,

27  among other things "gross wages earned," the "total hours worked by the employee," "net wages

28  earned," and "all applicable hourly rates in effect during the pay period and the corresponding

number of hours worked at each hourly rate by the employee."  *See also* Cal. Lab. Code § 226.3 (providing penalties for employers who violate § 226(a)); Cal. Lab. Code § 1174(d) (providing every employer shall keep "payroll records showing the hours worked daily and the wages paid to . . . employees"); Cal. Code Regs. tit. 8, § 11040(7)(A)(3) (requiring each employer "keep accurate information" of "[t]ime records showing when the employee begins and ends each work period," including "[m]eal periods, split shift intervals and total daily hours worked," though "[m]eal periods during which operations cease and authorized rest periods need not be recorded"). Further, California Labor Code § 226(e)(1) allows any "employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a)" to recover damages.  "An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide a wage statement," or if there is a violation of § 226(a) and "the employee cannot promptly and easily determine from the wage statement alone" any of the following: "[t]he amount of the gross wages or net wages paid to the employee during the pay period," the total hours worked during the pay period, "[w]hich deductions the employer made from gross wages to determine the net wages paid to the employee during the pay period," the employer's "name and address," or "[t]he name of the employee and only the last four digits of their social security number or an employee identification number other than a social security number."  Cal. Lab. Code § 226(e)(2).

Scott has stated a claim for a violation of California Labor Code § 226.  He alleges Cintas "failed to furnish . . . itemized wage statements accurately showing . . . gross wages, total hours worked, net wages earned, and all applicable hourly rates in effect during the pay period as well as the number of hours corresponding to each hourly rate."  (Dkt. No. 34 ¶ 126.)  Specifically, Cintas "failed to keep accurate payroll records showing the daily hours worked by Plaintiff and the . . . wages [he] should have been paid" since he was misclassified as an exempt employee—under the California Labor Code, employers do not need to record the hours worked by exempt employees, *see* Cal. Lab. Code § 226(j) (explaining "[a]n itemized wage statement furnished by an employer . . . shall not be required to show total hours worked by the employee if . . . [t]he employee's compensation is solely based on salary and the employee is exempt from payment of overtime").

1   (*Id.* ¶ 63.)

2          Scott has also adequately pled his own injury and that Cintas knowingly and intentionally

3   violated California's wage statement requirements.  Scott alleges he was "injured" by the

4   inaccurate payroll records because he "was confused about whether [he] was paid properly and/or

5   [he] was misinformed about how many total hours [he] worked during each pay period." (*Id.* ¶

6   127.)  Moreover, under California Labor Code § 226(e)(2), if the wage statement does not indicate

7   the total hours worked, then an employee is deemed to have suffered an injury.  Cal. Lab. Code §

8   226(e)(2).  Finally, Scott alleges Cintas had the requisite knowledge and intentionality because

9   this was part of Cintas's "company-wide policy, pattern, or practice" of "willfully failing to record

10  all of the time Plaintiff," and other management trainees "worked." (*Id.* ¶ 79.)  *See Amey v.*

11  *Cinemark USA Inc.*, No. 13-CV-05669-WHO, 2018 WL 3956326, at \*6 (N.D. Cal. Aug. 17, 2018)

12  ("If deficient wage statements were issued over several years to multiple employees, their issuance

13  cannot be excused as inadvertence or mistake."); *Fodera v. Equinox Holdings, Inc.*, No. 19-CV-

14  05072-WHO, 2020 WL 3961985, at \*4 (N.D. Cal. July 13, 2020) (same).

15         Cintas moves to dismiss this claim because "Plaintiff does not assert ***any*** facts . . . to

16  plausibly support that any inaccuracies existed in Plaintiff's wage statements at the time Cintas

17  allegedly issued them or provide any example of any inaccurate wage statements allegedly

18  furnished by Cintas." (Dkt. No. 35-1 at 11.)  This argument misses the mark.  First, Scott does

19  assert facts supporting his claim his wage statement failed to accurately record the hours he

20  worked: Scott alleges he was misclassified as an exempt employee, and therefore *all* the overtime

21  hours he worked were uncompensated and unrecorded.  Drawing all inferences in Scott's favor,

22  Scott has plausibly pled, as a misclassified employee, Cintas failed to record the hours he worked

23  when he worked over 40 hours a week and therefore violated California Labor Code § 226.

24  Second, Defendant provides no authority for its assertion Scott is required to provide an exemplar

25  wage statement—a requirement that would seem unnecessary given Cintas itself was furnishing

26  the wage statements.  So, Cintas's motion to dismiss this claim is DENIED.

27  **V.     FAILURE TO PAY ALL WAGES UPON TERMINATION**

28         Plaintiff's sixth cause of action alleges Cintas failed to pay all wages upon termination to

11

1    him, and other former California Management Trainees in violation of California Labor Code §§

2    202, 203, and 256.  California Labor Code § 202 provides for the payment of wages within 72

3    hours for employees who "quit[]."  Cal. Lab. Code § 202.  California Labor Code § 203 provides a

4    private right of action, explaining "[i]f an employer willfully fails to pay. . . in accordance with

5    Section[] . . . . 202 . . . any wages of an employee . . .  who quits," the employee can seek waiting

6    time penalty payments.  Cal. Lab. Code § 203.

7         Plaintiff alleges he quit his employment with Cintas in January 2022, but Cintas failed to

8    pay all the wages owed to him.  (Dkt. No. 34 ¶¶ 7, 133.)  Cintas moves to dismiss this claim

9    because it is "purely derivative of the predicate Labor Code violations," and "[s]ince Plaintiff's

10   predicate Labor Code claims fail, his waiting time penalties claim must fail too."  (Dkt. No. 35-1

11   at 11.)  But, as discussed above, Plaintiff states a claim under the predicate violations.

12   Accordingly, Defendant's motion to dismiss this claim is DENIED.

13   **VI.   UNFAIR COMPETITION LAW**

14        Plaintiff's seventh cause of action alleges Cintas violated California's Unfair Competition

15   Law ("UCL"), Cal. Business & Professions Code §§ 17200 *et seq*.  The UCL defines unfair

16   competition as "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof.

17   Code, § 17200.  Because the statute "is written in the disjunctive, it establishes three varieties of

18   unfair competition" and each is a basis for liability.  *Cel-Tech Comm'n, Inc. v. Los Angeles*

19   *Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citation omitted).  Plaintiff focuses on the

20   "unlawful" prong of the UCL and asserts because Cintas violated the various labor laws as alleged

21   in Plaintiff's previous claims, therefore Cintas has also violated the UCL.  (Dkt. No. 34 ¶ 138.)

22   Because Plaintiff states a claim for the predicate violations, Plaintiff also states a claim under the

23   UCL.

24        However, "the UCL provides only for equitable remedies."  *Sonner v. Premier Nutrition*

25   *Corp.*, 971 F.3d 834, 839 n.2 (9th Cir. 2020) (quoting *Hodge v. Superior Court*, 145 Cal. App. 4th

26   278, 51 (2006)).  Federal courts cannot "award[] equitable relief when an adequate legal remedy

27   exists."  *Id.* at 842; *see also Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 105 (1945) ("Equitable

28   relief in a federal court is of course subject to restrictions," including that "the suit must be within

United States District Court
Northern District of California

12

1    the traditional scope of equity" and "a plain, adequate and complete remedy at law must be

2    wanting."). So, Scott "must establish that [he] lacks an adequate remedy at law before securing

3    equitable restitution for past harm under the UCL" in federal court. *Sonner*, 971 F.3d at 844. If

4    Scott has a "viable" legal "damages claim," then he cannot pursue an equitable claim under the

5    UCL for the same alleged harm. *Guzman v. Polaris Indus.*, 49 F.4th 1308, 1313 (9th Cir. 2022),

6    *cert. denied sub nom. Polaris Indus. Inc. v. Albright*, 143 S. Ct. 2612 (2023).

7          Plaintiff fails to allege an inadequate remedy at law. His complaint does not allege he

8    lacks an adequate remedy at law for the conduct underlying the alleged UCL violations. Indeed,

9    because Plaintiff alleges the UCL violations are premised on unlawful conduct, and because

10   Plaintiff is able and does bring viable claims under those predicate laws, Plaintiff does have

11   adequate remedies at law for all the conduct underlying his UCL claim. Plaintiff does not assert

12   any reason why monetary damages cannot fully compensate him for his alleged harms.

13   Accordingly, Plaintiff's UCL claim must be dismissed without prejudice.

14         In his response, Plaintiff asserts because the UCL expands the statute of limitations for

15   wage and hour claims from three to four years, the remedies under California's Labor Code alone

16   are inadequate. In *Guzman*, the Ninth Circuit held "equitable relief must be withheld when an

17   equivalent legal claim would have been available but for a time bar." 49 F.4th at 1312. *Guzman*

18   therefore indicates the longer statute of limitations under the UCL does not, on its own, make an

19   equivalent legal claim inadequate. Indeed, "several courts have rejected" the argument that a

20   longer statute of limitations under the UCL renders legal claims based on the same underlying

21   alleged actions inadequate. *Ramirez v. HV Glob. Mgmt. Corp.*, No. 21-CV-09955-BLF, 2023 WL

22   4410944, at *7 (N.D. Cal. July 6, 2023) (dismissing UCL claim because Plaintiff has an adequate

23   remedy at law even if the legal remedy has a shorter statute of limitations); *Utne v. Home Depot*

24   *U.S.A., Inc.*, No. 16-CV-01854-RS, 2022 WL 1443339, at *2 (N.D. Cal. May 6, 2022) ("[C]ourts

25   have nonetheless found that the one-year difference [in the statute of limitations for the UCL as

26   compared to legal claims] did not make damages inadequate after *Sonner*.").

27         Accordingly, the Court DISMISSES Plaintiff's UCL claim for lack of equitable

28   jurisdiction. Because any amendment would be futile, *Wheeler v. City of Santa Clara*, 894 F.3d

United States District Court
Northern District of California

13

1    1046, 1059 (9th Cir. 2018), the Court dismisses the claim WITHOUT LEAVE TO AMEND but

2    without prejudice.  *Guzman*, 49 F.4th at 1314-15 (explaining when a federal court "lack[s]

3    equitable jurisdiction over" the plaintiff's "UCL claim," it should dismiss the UCL claim "without

4    prejudice to refiling the same claim in state court.").

5                                              **CONCLUSION**

6            For the reasons stated above, the Court DENIES Cintas's motion to dismiss as to all claims

7    except for Scott's UCL claim.  The Court DISMISSES Scott's UCL claim without prejudice and

8    WITHOUT LEAVE TO AMEND.

9            The Court schedules a case management conference for August 1, 2024 at 1:30 p.m. by

10   Zoom video.  Parties should file a joint case management statement on or before July 25, 2024.

11           This Order resolves Dkt. No. 35.

12           **IT IS SO ORDERED.**

13   Dated: July 3, 2024

14

15

16   JACQUELINE SCOTT CORLEY
     United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

14